STATE OF NORTH CAROLINA v. JAMES LUTHER PRUITT

No. 87

(Filed 6 January 1981)

1. Criminal Law § 34.8— defendant's involvement in other crimes — admissibility of evidence

In a prosecution of defendant for conspiracy to commit forgery and conspiracy to utter forged instruments, the trial court did not err in admitting testimony by a State's witness that defendant had been involved in the commission of an offense other than the ones for which he was being tried, since the other offense was a break-in during which a check writer and checks were taken from a cabinet shop; the challenged evidence was competent to show that the check writer and checks which defendant and his companions had used in perpetrating the forgeries in question had been stolen from the cabinet shop; this was a part of the overall scheme which embraced the related offenses for which defendant was being tried and tended to connect him with those offenses; and defendant himself opened the door to such testimony by inquiring further into charges pending against the State's witness.

2. Criminal Law § 96— objectionable evidence withdrawn — defendant not prejudiced

The trial court did not err in permitting the State to question a witness with respect to another offense unrelated to the case being tried and in denying defendant's motion for a mistrial because of the admission of the evidence and comments

of the district attorney which followed, since the court instructed the jury that the objectionable evidence had nothing entirely to do with the case, that the jury should strike the evidence from their minds, and that any juror who could not do so should raise his hand, which no juror did.

Justice BROCK did not participate in the consideration or decision of this case.

ON *certiorari* to review judgment of *Smith (David I.)*, *J.*, entered at the 23 April 1979 Special Criminal Session of GUILFORD Superior Court, Greensboro Division.

Upon pleas of not guilty defendant was tried on bills of indictment, proper in form, charging him with four counts of conspiracy to commit forgery and four counts of conspiracy to utter forged instruments. Evidence presented by the state is briefly summarized as follows:

Defendant and several companions had obtained the check-writing machine and a checkbook belonging to the Safrit Cabinet Shop in Thomasville, North Carolina. On the evening of 22 December 1978, defendant and his companions were riding around together and were overheard to say that they were going to obtain a lot of money. Later that evening, defendant and the others went to the trailer where defendant lived with two other people. At that time they had in their possession the check-writing machine and the aforesaid checkbook. Defendant placed the checks in the machine and he and Anthony Nealy signed them. The checks were then given to Elbert Nealy. They were payable to Valerie Bradley, the name which appeared on a false indentification card carried by Kim Huffman with whom defendant lived. Elbert Nealy, Kim Huffman and Gail Hicks then took the checks to several grocery and convenience stores where they were exchanged for groceries and cash.

Defendant offered evidence, including the testimony of Anthony Nealy, which tended to show that defendant had nothing to do with the scheme and that all of it was carried out by Anthony Nealy.

The jury returned a verdict finding defendant guilty of conspiracy to commit forgery in four cases. The court consolidated the cases for the purpose of judgment and imposed a prison sentence of 10 years, said sentence to begin at expiration of a sentence already being served by defendant.

Defendant gave notice of appeal to the Court of Appeals. He failed to perfect his appeal within the time allowed by the rules and petitioned that court for a writ of certiorari. The petition was denied. Defendant then petitioned this court for a writ of certiorari to review the decision of the Court of Appeals denying his petition. This court allowed that petition on 1 April 1980. We also treat defendant's petition to this court as a motion to bypass the Court of Appeals in reviewing the case on the merits and allow that motion.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General James Peeler Smith, for the state.*

*Neill A. Jennings, Jr. for defendant.*

BRITT, Justice

[1]  Defendant contends first that the trial court erred in admitting testimony by a state's witness that defendant had been involved in the commission of an offense other than the ones for which he was being tried. This contention has no merit.

Kim Huffman was called and testified as a witness for the state. On cross-examination defendant attempted to show that she had made a "deal" with the state and that she had a long criminal record. She testified that she had sixteen charges pending against her "in these cases"; that she had been indicted in Forsyth, Davidson and Guilford Counties; and that in Davidson County she was charged with being an accessory after the fact to a break-in.

On re-direct examination, with respect to the Davidson County break-in case, the prosecuting attorney asked the witness who was charged in that case. Over defendant's objection, she testified that defendant, Elbert Nealy and Anthony Nealy were charged and that the check-writer in question, as well as "a checkbook with checks", had been taken from Safrit's Cabinet Shop.[1]

Defendant argues that the admission of the testimony violated the rule enunciated in *State v. McClain*, 240 N.C. 171, 81 S.E.2d 364 (1954), that in a prosecution for a particular crime, the state cannot offer evidence tending to show that the accused has committed another distinct, independent or separate offense. Defendant also challenges the admission of the testimony on the additional ground that a defendant in a criminal action may not be cross-examined

---

[1]It will be noted that Thomasville is in Davidson County.

with respect to whether he had been indicted for the commission of an unrelated criminal offense for purposes of impeachment, relying upon our opinion in *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971). Defendant's argument in both respects is unpersuasive.

Although the rule of *State v. McClain, supra*, states the general rule upon which defendant relies, it further provides that there are eight basic exceptions to that fundamental principle. One of the exceptions is: "Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission." *State v. McClain*, 240 N.C. at 176, 81 S.E.2d at 367; *see generally* 1 Stansbury's North Carolina Evidence § 92 (Brandis Rev. 1973).

The challenged evidence was competent to show that the checkwriter and checks which defendant and the others had used in perpetrating the forgeries in question had been stolen from Safrit's Cabinet Shop. This was a part of the overall scheme which embraced the related offenses for which defendant was being tried and tended to connect him with those offenses.

Furthermore, defendant's reliance upon *State v. Williams, supra*, is misplaced. The *Williams* decision relates to the situation where a criminal defendant is cross-examined *himself* with respect to an indictment for criminal conduct for the purpose of impeaching his credibility before the jury. While in the present case the inquiry was not made of defendant, we do not rest our decision upon that distinction. To do so would be to elevate form over substance to the end that our holding would not adhere to the underlying rationale of *State v. Williams*: An indictment is purely hearsay in that it is a conclusion drawn upon an *ex parte* presentation of evidence. *See State v. Williams*, 279 N.C. at 673, 185 S.E.2d at 180.

Our rejection of defendant's contention is not based upon a fine technical distinction between cases. Instead, a close examination of the record discloses that defendant opened the door to further inquiry by the prosecution by cross-examining Kim Huffman concerning the charges then pending against her. In conducting the inquiry, defense counsel sought to impeach the state's witness by connecting her with other criminal activity. Apparently, counsel sought to convince the jury that Ms. Huffman was testifying in a

particular manner so as to obtain leniency towards her from the state. While the state would not have been entitled to initiate such an inquiry itself, it was entitled to explore the matter fully in its attempt to rehabilitate its witness. Ms. Huffman testified on cross-examination that she was charged as an accessory after the fact of a break-in which had occurred in Davidson County. Accordingly, the state was entitled to have its witness elaborate upon the nature of that accusation, even to the extent to naming those who had been charged with the commission of the underlying substantive offense. In the process of securing that elaboration, the state was able to secure the connection it had earlier demonstrated between defendant and the forgery scheme.

[2]   Defendant contends that the trial court erred in permitting the state to question Kim Huffman with respect to another offense unrelated to the cases being tried; and in denying his motion for a mistrial because of the admission of said evidence and comments of the district attorney which followed. We find no merit in these contentions.

Defendant also called Kim Huffman as a witness. On re-cross-examination the prosecuting attorney asked the witness "[w]ho got killed . . .?" She answered, "Jerry Kenan." Defendant objected and the court overruled the objection. The witness was then asked who Jerry Kenan was and she answered: "he is a friend of ours." The witness further states that she was unable to state what connection Kenan had to the case. After this testimony had been received, defendant moved for a mistrial. Following a conference between the attorneys and the court in the absence of the jury, the motion was denied.

Defendant argues that this testimony was a follow-up of testimony elicited on the re-direct examination of Gail Hicks, another witness for the state. Ms. Hicks had testified that James Nealy had shot and killed Kenan after he had helped her inject some drugs into her arm. Defendant contends that the testimony was prejudicial error in that it placed before the jury other acts of unlawfulness which were completely unrelated to the offenses which were then being tried.

We reject defendant's argument. When the jury returned to the courtroom after the conference had been concluded between the attorneys and judge, the court immediately proceeded to give the

following instruction:

> Members of the jury, during the course of the trial there has been some testimony in reference to an individual by the name of Jerry Kenan and that Jerry Kenan was recently murdered. The Court instructs you that the circumstances and the death of Jerry Kenan have nothing entirely to do with this particular case and that there is no evidence that this defendant was whatsoever in any way involved in that, or had anything to do with it, and you're not to hold anything concerning Jerry Kenan and his demise against this particular defendant. He's not to be prejudiced by that. We're trying a forgery and a conspiracy to forge case. Is there anyone on this jury who thinks they cannot strike this reference from their mind and who will not, or who cannot refrain from holding against this particular defendant in these cases? If there is anyone, please raise your hand.

The record does not disclose that any juror raised his or her hand.

Ordinarily, when incompetent or objectionable evidence is withdrawn from the jury's consideration by appropriate instructions from the trial judge, any error in the admission of the evidence is cured. *E.g., State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976). In like manner, improper argument or remarks by counsel are usually cured by appropriate instructions by the court to the jury. *State v. Sparrow*, 276 N.C. 499, 173 S.E.2d 897 (1970). Assuming, *arguendo*, that the testimony about which defendant complains was erroneously admitted, there was no prejudice because of the curative instructions which the jury received.

In defendant's trial and the judgment entered, we find

No error.

Justice BROCK did not participate in the consideration or decision of this case.