STATE OF NORTH CAROLINA v. WEAVER B. MARTIN

No. 8328SC857

(Filed 20 March 1984)

**1. Bills of Discovery § 6; Constitutional Law § 30— failure to disclose supplemental handwriting analysis—no abuse of discretion in failing to sanction State**

   Defendant failed to show the trial judge abused his discretion in failing to employ a remedy available under G.S. 15A-910 when the State failed to disclose a supplemental FBI handwriting analysis report damaging to defendant since defendant never indicated he was unaware of the supplemental report; he made no argument at trial that the State violated the discovery order; and his general objection was directed at three items of evidence and not at the handwriting analysis alone.

**2. Criminal Law § 173— "opening the door" to inquiry into other crimes of defendant**

   There was no merit to defendant's contention that he was denied a fair trial or due process of law by the allowance into evidence of records of similar crimes committed by defendant where the record disclosed that defendant "opened the door" to further inquiry by the prosecution by cross-examining the co-defendant concerning charges against him in Florida.

**3. Criminal Law § 34.8— evidence of other crimes—common plan or scheme**

   The trial judge did not err in allowing testimony by the co-defendant regarding similar crimes in which the defendant participated where the testimony clearly established a common plan or scheme to commit the crimes of obtaining property by forgery and uttering checks and forging credit card purchases.

**4. Searches and Seizures § 11— admission of items seized in inventory search of automobile admissible**

   The evidence supported a trial court's findings of fact and conclusion of law that items seized in an inventory search of an automobile were admissible where an officer was investigating possible criminal behavior when he parked his patrol car behind defendant's vehicle, which matched the description of a vehicle used in several neighborhood breaking and entering crimes, and approached the two men in the vehicle, also meeting the description of men involved in the crimes; where the officer's sighting of two males in a white car parked in a driveway of the neighborhood he was patrolling warranted reasonable suspicion, based on articulate and objective facts, to detain the defendant initially; and circumstances following the initial detention gave rise to probable cause to arrest the defendant for a crime.

APPEAL by defendant from *Howell, Judge.* Judgment entered 28 March 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 14 February 1984.

Defendant was initially arrested and served with a warrant charging him with possession of implements of housebreaking. Subsequently, a grand jury returned true bills of indictment charging him with sixty-five forgery and uttering indictments in violation of G.S. 14-119 and G.S. 14-120 and one indictment for possession of implements of housebreaking in violation of G.S. 14-55.

A co-defendant, Ray Jennings, testified pursuant to a plea arrangement for the State. His testimony tended to show that he and the defendant worked together in Florida, but that business proved unprofitable. In order to avoid arrest on bad check charges, they came to Asheville where they lived at the Downtowner Motel. The two conceived a plan to make money by breaking into houses, stealing blank checks, and then writing checks from one account to another. Jennings described his breaking into the homes of four persons using a screwdriver, and his theft of checks and credit cards while the defendant waited in a 1965 Chrysler automobile. In addition, he described the theft of a North Carolina license plate which they used alternately with defendant's Florida license plate. He further described a break-in at the home of a witness for the State, the theft of a payroll check, and forgery of the witness's name. Jennings identified the checks offered into evidence by the State and testified that the defendant was with him when the checks were written or actually passed. Proceeds from the checks were divided equally.

A *voir dire* was conducted as to the admissibility of items seized in the car at the time of the arrest. The trial court made findings of fact and denied defendant's motion to suppress. Jennings testified thereafter in the presence of the jury, identifying tools and items of identification such as old drivers' licenses and stolen checks never negotiated. He further testified to the presence of burglary tools and a pistol along with various other stolen items in the car at the time of the arrest.

Verdicts of guilty were returned in three charges of forgery and uttering and one charge of possession of implements of housebreaking. In all other cases the trial judge withdrew a juror and declared a mistrial. The judge entered sentences imposing imprisonment for a total of eight years. Defendant appeals.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Jane P. Gray for the State.*

*Assistant Public Defender David Belser for defendant appellant.*

HILL, Judge.

[1] Defendant first asserts that the trial court erred in not invoking sanctions pursuant to G.S. 15A-910 for the State's failure to disclose a supplemental F.B.I. handwriting analysis report. Defendant claims that he was prejudiced by the report which identified defendant's handwriting in connection with a check drawn on the account of another party.

As part of his defense, defendant passed among the jurors an inconclusive fingerprint report prepared by Special Agent Bowers which the State stipulated was valid. Defendant tendered the report into evidence. Defendant says he was not aware of Special Agent Bowers' supplemental report, and had he known of it, he would not have attempted to introduce the inconclusive handwriting evidence which the State could easily counter with the devastating proof in the supplemental report. Defendant contends that since he made a timely motion for discovery in accordance with G.S. 15A-902(a), the State had the continuing duty to disclose the supplemental report which came into existence during the trial. See *State v. Jones*, 296 N.C. 75, 248 S.E. 2d 858 (1978).

We find no error. The decision to employ remedies available under G.S. 15A-910 is a matter within the discretion of the trial judge and, absent abuse, is not reviewable on appeal. *State v. Thomas*, 291 N.C. 687, 231 S.E. 2d 585 (1977). Defendant at trial never indicated he was unaware of the supplemental report. He made no argument at trial that the State violated the discovery order. His general objection was directed at three items of evidence, and he made no request for sanctions against the State as provided in G.S. 15A-910. Defendant showed no evidence of bad faith by the State. For these reasons we find no abuse of discretion by the trial judge in refusing to impose sanctions. This assignment of error is overruled.

[2] Defendant next contends he was denied a fair trial or due process of law by the allowance into evidence of records of similar crimes committed by the defendant. We disagree.

It is well settled in our state that the prosecution cannot introduce evidence of another crime of the defendant which is independent of and distinct from the crime for which the defendant is on trial, even though of a similar nature. *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). However,. the record discloses that defendant opened the door to further inquiry by the prosecution by cross-examining the co-defendant Jennings concerning charges against him in Florida. Defendant also attempted to depreciate the value of Jennings' testimony by implying he would get a shorter term by testifying on behalf of the State. While the State could not have initiated such a line of inquiry on direct examination, it was entitled to explore the matter fully in its attempt to rehabilitate the witness. *State v. Pruitt,* 301 N.C. 683, 273 S.E. 2d 264 (1981).

[3]   Nor do we find error by the trial judge in allowing testimony by the co-defendant regarding similar crimes in which the defendant participated in the city of Asheville. In reviewing the totality of the wrongdoings by the defendant and co-defendant, we believe the testimony clearly establishes a common plan or scheme to commit the crimes of obtaining property by forgery and uttering checks and forging credit card purchases. See *State v. McClain,* 240 N.C. at 176, 81 S.E. 2d at 367; see generally 1 Stansbury's North Carolina Evidence § 92 (Brandis Rev. 1973).

Defendant next contends the trial judge erred in admitting the motel records which showed the defendant's registration and a bank deposit slip on which a bank teller had written defendant's license tag number when he cashed a check. Defendant contends the manager of the hotel was limited in her testimony to the period she was manager, i.e., from July 5 through July 16; and since the crimes for which the defendant is charged occurred in June, defendant says the registration records are incompetent and inadmissible under the hearsay rule. We find no error. The defendant admitted he was at the motel during June; and although defendant objected to the admissibility of the testimony by Mrs. Penland, the manager, defendant did not object when the records were offered into evidence. Nor do we find error in admitting the bank deposit slip. The number written on the deposit slip corresponded with the license plate later found in defendant's car. The evidence is undisputed and competent. This assignment of error is overruled.

**[4]** Defendant next contends the trial court erred in admitting evidence found in defendant's automobile. Defendant argues the evidence was obtained as a result of an unconstitutional search and seizure of the defendant and his automobile.

From testimony at *voir dire* and trial, the facts surrounding the search and seizure are as follows: Officer Buckner was a member of a breaking and entering squad and was engaged in patrolling the neighborhood in question for any suspicious activity. Two or three days earlier he had been made aware of an investigation being conducted by Detective Drew concerning the check scheme since it also involved breaking and entering homes. Buckner had been told the suspects were two white males, one large and one small, driving a large white car having a North Carolina license tag number "BJN 43." As part of his investigative procedure, he routinely checked as many vehicles parked in driveways as possible.

When on his patrol, Buckner observed a large white car sitting in a driveway of a residence. He testified the presence of the car looked suspicious. He therefore pulled behind the car at an angle, partially blocking it. When he approached the car, he asked the defendant and co-defendant if they had a problem, or if he could be of any help. No response was immediately forthcoming, but finally they said that they were lost and looking for a friend. Officer Buckner noticed a large green handle screwdriver lying on the front seat, which the defendant was trying to cover up with his hand. Buckner then asked for their drivers' licenses, and while defendants were getting them out, Buckner noticed a pair of pliers and another screwdriver lying on the floorboard. He then asked defendants to step out of the car. On the second or third direction to step out of the car, Officer Buckner unsnapped his gun but never took it from his holster. The defendants stepped out of the car and Buckner noticed a pry bar and a couple of brown paper bags on the floor. One of the bags contained a North Carolina license plate with the number "43" exposed. Officer Buckner also noticed a pair of white cotton gloves in Jennings' right hip pocket, which he described as "strange in August." Another officer arrived, and a computer inquiry was conducted. Jennings was arrested as a person wanted in Florida for forgery. Martin was arrested for possession of burglary tools.

After arrest the defendant's vehicle was inventoried. In addition to the items mentioned aforesaid, the following items were discovered: a lock pick, jimmy bar, green handle nose pliers, yellow handle screwdriver, .32 caliber automatic pistol, walkie talkie, Tennessee license plate, various items of electronic equipment, and various clothing and travel items. Officer Marple testified he saw a lock pick next to the passenger side of the car on the asphalt. The trial judge concluded that those items discovered in the inventory were admissible.

A police officer "may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed. 2d 889, 906-07 (1968). It was this investigative function that Officer Buckner was discharging when he parked his patrol car behind defendant's vehicle and approached the two men in the vehicle. Officer Buckner was patrolling the neighborhood having been made aware of the investigation of two males in a white car breaking and entering homes for the purpose of obtaining checks. The officer's sighting of two males in a white car parked in a driveway of the neighborhood he was patrolling warranted reasonable suspicion, based on articulate and objective facts, to detain the defendant initially. See *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed. 2d 357 (1979); *State v. Cooke*, 54 N.C. App. 33, 282 S.E. 2d 800 (1981), *aff'd*, 306 N.C. 132, 291 S.E. 2d 618 (1982). Circumstances following the initial detention gave rise to probable cause to arrest the defendant for a crime. Granted, one can possess items such as screwdrivers and pliers for lawful purposes, but when the use of such implements is in issue, it is for the jury to determine the lawfulness of their possession. *State v. Shore*, 10 N.C. App. 75, 178 S.E. 2d 22 (1970), *cert. denied*, 278 N.C. 105, 179 S.E. 2d 453 (1971). The evidence supports the trial court's findings of fact which support the conclusion of law that the items seized in the inventory search were admissible.

Lastly, we find no merit in defendant's contention that the trial court committed reversible error in denying his motion to dismiss the case based on the insufficiency of the evidence and in failing to set aside the judgment.

No error.

Judges HEDRICK and EAGLES concur.