STATE OF NORTH CAROLINA v. A'DOLPHUS MARCEL MARTIN

No. 8430SC1182

(Filed 1 October 1985)

1. **Criminal Law §§ 23.4, 91.1— rejection of plea bargain—failure to grant continuance or give opportunity to modify—no error**

There was no error in a prosecution for possession of cocaine with intent to sell and sale and delivery of cocaine where the trial court rejected defendant's plea arrangement without granting a continuance or giving defendant an opportunity to modify the arrangement. Defendant failed to move for a continuance and the trial court rejected the plea because it was not free and voluntary, so that an opportunity to modify the agreement would not have resolved the problem and made the plea acceptable. G.S. 15A-1023(b).

2. **Criminal Law § 7; Narcotics § 4.2— possession of cocaine with intent to sell—evidence of entrapment insufficient**

There was insufficient evidence to require submission of the defense of entrapment to the jury where defendant's evidence failed to show acts of persuasion, trickery, or fraud used by the S.B.I. agent to induce defendant to obtain cocaine; defendant had his own contact from whom he obtained cocaine and was not led to a dealer by the S.B.I. agent; and defendant presented no evidence that the agent made efforts to ingratiate himself with defendant, offered gifts, or made promises. That the agent gave defendant money and asked him to obtain cocaine was not evidence of inducement, just an opportunity to commit the offense.

APPEAL by defendant from *Burroughs, Judge.* Judgments entered 29 March 1984, in Superior Court, MACON County. Heard in the Court of Appeals 26 August 1985.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Marilyn R. Rich for the State.*

*Appellate Defender Adam Stein by Assistant Appellate Defender Robin E. Hudson for defendant appellant.*

COZORT, Judge.

Defendant was charged in indictments proper in form with four counts of possession of cocaine with intent to sell and three counts of sale and delivery of cocaine. He was found guilty of all charges and received consecutive sentences of three and ten years. On appeal, defendant contends it was error for his case to be tried by the same trial judge who rejected a plea agreement because the judge did not believe the plea was voluntarily made by defendant. Although he did not move for a continuance at that time, defendant argues that the trial court should have continued the case on its own motion. Defendant also contends the trial court erred by failing to submit to the jury the issue of entrapment. We find no error. The relevant procedures and facts follow.

Prior to trial, counsel for defendant and the assistant district attorney announced to the court that they had reached a plea agreement whereby defendant would plead guilty to four counts of sale and delivery, the remaining charges would be dismissed, and defendant would receive a five-year sentence. The trial judge questioned defendant, as required under G.S. 15A-1022, to determine the voluntariness of his plea, and rejected the plea bargain. Defendant did not move for a continuance.

At trial the State presented evidence which tended to show the following: Rick Whisenhunt, special agent for the State Bureau of Investigation, testified that on 26 May 1983 he met defendant at the Sky City parking lot in Franklin. Whisenhunt told defendant that he was interested in buying an eighth of an ounce of cocaine. Defendant said that he did not have any cocaine with him, but he could go to Mountain City, Georgia, to get some and bring it back. Defendant took $360.00 in advance payment and told Whisenhunt that he would meet him with the cocaine at 11:45 a.m. in the Macon Plaza Shopping Center. At 11:45 Whisenhunt picked up defendant at the shopping center and defendant told him that he would be extremely pleased with the cocaine. Defendant "snorted" a line of cocaine, resealed the baggie and gave it to

Whisenhunt. Defendant said that he had been dealing drugs for sixteen years and had a reputation in the community as a "fair dealer who gave a good product at a fair price." Defendant also told Whisenhunt that he liked him and looked forward to dealing drugs with him in the future. At 5:30 p.m. Whisenhunt called defendant and went over to his house to discuss buying a quarter ounce of cocaine. Whisenhunt paid defendant $570.00 and defendant later gave him the cocaine. On 3 June 1983 defendant sold Whisenhunt another quarter ounce of cocaine. On 14 June 1983 Whisenhunt and S.B.I. Agent D. C. Ramsey met defendant and discussed buying a half ounce of cocaine. Defendant wanted the money in advance and Whisenhunt and Ramsey refused to pay. On 6 October 1983 defendant told Whisenhunt he could get him a half ounce of cocaine for $1,200.00, but he would need the money in advance. They agreed to meet at 7:00 p.m. at a motel. S.B.I. Agent Tom Frye and Whisenhunt met defendant that evening, defendant produced the cocaine, and the S.B.I. agents arrested defendant.

Defendant testified that when Whisenhunt first contacted him he said that he did not sell cocaine, but he knew someone who could help him. In May Whisenhunt went to defendant's house and defendant told him again that he did not have any cocaine, but he "would see what [he] could do for him." They met on 26 May 1983 at a bowling alley and defendant sold Whisenhunt and Graham Winstead cocaine. Defendant said that he did not make any profit, but he did it because he believed in helping people. In June and August 1983 defendant sold more cocaine to Whisenhunt. Defendant said that he knew it was wrong to sell cocaine, but he did it as a favor to Whisenhunt.

Defendant admitted that he had prior convictions for felonious possession of marijuana, possession with intent to sell marijuana, misdemeanor larceny, and traffic violations.

Defendant was found guilty of all charges and was sentenced to consecutive sentences of three and ten years.

[1] In his first assignment of error defendant argues that he is entitled to a new trial because the trial judge rejected his plea arrangement and failed to give him an opportunity to modify the arrangement or grant a continuance.

G.S. 15A-1023(b) provides, in pertinent part:

If the judge rejects the arrangement, he must so inform the parties, refuse to accept the defendant's plea of guilty or no contest, and advise the defendant personally that neither the State nor the defendant is bound by the rejected arrangement. The judge must advise the parties of the reasons he rejected the arrangement and afford them an opportunity to modify the arrangement accordingly. Upon rejection of the plea arrangement by the judge the defendant is entitled to a continuance until the next session of court.

Before the trial, the trial judge was informed that the parties had reached a plea arrangement. The trial judge questioned defendant, as required under G.S. 15A-1022 to determine the voluntariness of the plea. The following exchange occurred:

Q. [The Court]: Do you now plead guilty?

A. [Defendant]: Yes sir.

Q. Are you in fact guilty?

A. No, sir.

Q. You are not guilty?

A. Not in fact.

Q. You're not guilty? Well, I'd better reject the plea bargain then.

At this point counsel for defendant spoke to defendant, and defendant said that he wanted to change his answer.

Q. [The Court]: Do you now personally plead guilty?

A. Yes, sir.

Q. And you are in fact guilty?

A. Yes, sir.

. . . .

Q. Other than the plea arrangement between you and the prosecutor, has anyone made any promises or threatened you in any way to cause you to enter this plea?

A. If it please the Court, your Honor, not as of now, but before this case came to court I was made promises of my cooperation with the County in certain areas and categories that things would be enlightened for me.

THE COURT: All right, the plea is rejected.

The trial judge later said that he had rejected the plea because he did not believe it was free and voluntary due to defendant's responses as to whether he was guilty and whether he had been made any promises.

Defendant contends that the trial judge erred because he failed to give the parties an opportunity to modify the agreement as required in G.S. 15A-1023(b). An opportunity to modify the agreement could have allowed the parties to change the sentence agreed upon, and would have been helpful had the trial judge rejected the plea arrangement because he did not believe the sentence was appropriate. In this case, however, where the trial judge rejected the plea because it was not free and voluntary, an opportunity to modify the agreement would not have resolved the problem and made the plea acceptable.

Defendant further contends that the trial judge erred by failing to order a continuance on its own motion after the plea was rejected. Defendant relies on *State v. Tyndall*, 55 N.C. App. 57, 284 S.E. 2d 575 (1981), to support his argument. In *Tyndall*, the defendant moved for a continuance after the trial judge rejected the plea arrangement. The judge denied the motion, and this Court ordered a new trial, holding that it was error to deny the motion for a continuance because G.S. 15A-1023(b) entitled the defendant to a continuance after the rejection of the plea arrangement. *Tyndall*, however, does not interpret G.S. 15A-1023(b) as requiring the court to order a continuance on its own motion. In the instant case defendant failed to move for a continuance, and the trial court was not required under G.S. 15A-1023 to order a continuance on its own motion. This assignment of error is overruled.

[2] In his second assignment of error defendant argues that the trial court erred by refusing to submit the issue of entrapment to the jury.

It is the duty of the trial judge to instruct the jury on all substantive features of the case raised by the evidence. *State v.*

---

---

*Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982). Before the trial court can submit the defense of entrapment to the jury there must be some credible evidence tending to support defendant's contention that he was a victim of entrapment. *State v. Walker*, 295 N.C. 510, 246 S.E. 2d 748 (1978). The defense of entrapment consists of two essential elements: (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime; and (2) that the criminal design originated in the minds of the law enforcement officers rather than the innocent defendant, such that the crime was the product of the creative activity of the law enforcement officers. *Id.; State v. Stanley*, 288 N.C. 19, 215 S.E. 2d 589 (1975).

Several recent cases from this Court illustrate what has been held to constitute sufficient evidence of entrapment to submit the defense to the jury. In *State v. Blackwell*, 67 N.C. App. 432, 313 S.E. 2d 797 (1984), the defendant presented evidence which tended to show that he had been unemployed for awhile and occasionally washed cars to make some money. The undercover agent approached the defendant and told him that he was thinking about opening a pool hall and offered him a job as a manager. The agent met the defendant many times before the drug transaction and talked about the job and gave the defendant small amounts of money. Upon the agent's request, the defendant sold him drugs at least twice. This Court held that an instruction on entrapment should have been submitted to the jury because the evidence, viewed in the light most favorable to defendant, tended to show that the undercover agent induced defendant to sell him the drugs by his gifts and promises of a job. In *State v. Jamerson*, 64 N.C. App. 301, 307 S.E. 2d 436 (1983), the defendant's evidence tended to show that two undercover agents approached him and asked him for drugs. The defendant, who was a college student, told them that he had no drugs. One agent told the defendant that they would be back that night, and he should get them some cocaine. Later that night the agents returned to defendant's apartment and one of them begged him to get cocaine. Defendant repeated that he did not have any. Finally, one agent told the defendant that he knew of another student on campus who could sell them some cocaine. The agent drove the defendant to the other student's dormitory and gave him the money to buy the cocaine. This Court held that viewed in the light most favorable to

the defendant, there was sufficient evidence to require a jury instruction on the entrapment defense and ordered a new trial. In *State v. Grier*, 51 N.C. App. 209, 275 S.E. 2d 560 (1981), the defendant, who was unemployed, testified that the undercover agent visited her home frequently, brought her food, beer and cigarettes, and gave her money to fix her car and repair her leaky basement. The agent also drove the defendant to make each of the drug purchases. This Court held that the agent ingratiated himself with the defendant in order to induce her to purchase drugs for him, and the trial court had properly submitted the issue of entrapment to the jury.

As these cases show, defendant must present evidence that Whisenhunt did something more than simply meet defendant and give him money to buy the cocaine. Defendant's evidence, viewed in the light most favorable to him, fails to show acts of persuasion, trickery, or fraud used by Agent Whisenhunt to induce defendant to obtain the cocaine. According to defendant, the first time he was contacted about buying cocaine he said: "I told [Graham Winstead] again that I didn't have any cocaine, you know, but I have come into contact with people, naturally, that do and that if he wanted some, I would see what I could do for him." Defendant later met Winstead and Whisenhunt; they drank a few beers, shot pool, and discussed cocaine. Whisenhunt gave defendant money for the cocaine. Defendant had his own contact in Georgia from whom he obtained the cocaine. He was not led to a dealer by Whisenhunt. Defendant has not presented any evidence that Whisenhunt made efforts to ingratiate himself with defendant, offered gifts, or made promises; rather, defendant's own evidence shows that he was very willing to sell Whisenhunt the cocaine. That Whisenhunt gave defendant the money and asked him to obtain the cocaine is not evidence of inducement, just an opportunity to commit the offense. *See State v. Booker*, 33 N.C. App. 223, 234 S.E. 2d 417 (1977). We find that defendant has failed to offer sufficient evidence of entrapment to require submission of the defense to the jury.

We have carefully reviewed defendant's assignments of error and find

No error.

Chief Judge HEDRICK and Judge ARNOLD concur.